No. 7571.

CITIZENS' SAVINGS BANK VS. JUDAH HART ET AL.*

A power of attorney which authorizes the agent to draw, sign, and indorse notes, checks, and bills in the name of the principal, which is deposited with a certain bank, and which, it appears, was designed by the principal to empower the agent to represent him only in such business as he might have with that bank, will not enable the agent to bind the principal by promissory notes in the principal's name for borrowed money secured by pledge, executed in transacting a business in which the principal never engaged with other persons than the bank, who had not seen the power of attorney, who had received no intimation from the principal that he had executed any such power, and who could, by proper inquiry, have ascertained that the agent in his dealings with them had exceeded his mandate.

APPEAL from the Fifth District Court, parish of Orleans. *Rogers, J.*

*E. W. Huntington* and *H. L. Dufour* for plaintiff and appellant.
*Chas. S. Rice* for defendants and appellees.

E. W. Huntington and H. L. Dufour, for plaintiff and appellant, contended :

That plaintiff had no reason to suspect, if such was the fact, that Maurice intended to convert the money to his own use. It is therefore immaterial whether he or his principal was benefited by the transaction, if the power of attorney gave Maurice general authority to sign notes.

" In like manner, if the written authority apparently justifies the act, it is no objection that the agent has secretly applied his authority to other purposes than those for which it was given ; as if, having an authority to make notes in the principal's name in managing his business, the agent should make such notes for secret purposes of a different nature, which could not be known to other persons dealing with him." Story on Agency, sec. 73; North River Bank vs. Aymar, 3 Hill, 262, 270, 271.

Chas. S. Rice, contra, contended :

First—That a power to make a note in the principal's name does not include the power to pledge. C. C. 2997.

Second—That a power to represent the principal in the latter's business with a certain person does not authorize the agent to bind the principal in his dealings with other persons.

*This case, omitted from the 31st Annual, is reported in this volume by direction of the late Court.—REPORTER.

Third—That whoever deals with one as the agent of another must inspect his power, and see, at his peril, that the agent does not transgress his power. Edwards on Bills and Notes, pp. 85 and 86 ; Story on Agency, § 70 and 73. Authorities reviewed, 25 An. 43; 30 An. 587.

The opinion of the court was delivered by

MARR, J. This suit was brought to recover of Judah Hart, Samuel J. Hart, and Maurice J. Hart, *in solido*, the balance alleged to be due on seventeen promissory notes. The petition charges that these notes were signed by Maurice J. Hart, agent for Judah Hart ; that they were given for a loan of money which was used by Judah Hart in his business as pawnbroker ; and that the other defendants were partners of Judah Hart in that business, and were benefited by the debt.

The allegations of the petition were put at issue by the separate answers of the defendants. The evidence satisfied the district judge that the alleged partnership did not exist; that neither Judah Hart nor Samuel J. Hart was liable on the notes ; and that Maurice J. Hart alone was bound. The plaintiff is appellant from the judgment rejecting the demand as to Judah and Samuel J. Hart, and condemning Maurice J. Hart for the whole amount demanded.

The controversy is narrowed down to the single question of the liability of Judah Hart.

For many years Judah Hart has been engaged in business in New Orleans as a pawnbroker, loaning money on pledges of jewelry alone. He makes his home in the city of New York, and visits New Orleans, for a few weeks only, once a year, in the winter, at the time of his annual sales of unredeemed pledges. He has ample means for this, the only business in which he is engaged. The business has been conducted by his two sons, employed as clerks, and by another person, also employed as clerk. In 1874, Maurice J. Hart ceased to be in the employ of his father, and was employed at the City Hall, in one of the departments of the city government, until the latter part of 1876, when he was appointed a deputy in the office of the criminal sheriff.

During the time that Maurice Hart was employed at the City Hall he dealt largely in " City Transfers," as they are called, that is, the claims of laborers and other employees of the corporation. He procured the means of purchasing or making loans on these claims from the Citizens' Savings Bank ; and the loans made by the bank for this business during the months of July, August, September, and October, 1876, are represented by the seventeen notes sued on, payable to the bank on demand, dated to correspond with the respective dates of the loans, bearing interest at the rate of two per cent a month, and secured by pledge of the claims against the city, with power of sale, expressed

in each note. These notes are all signed " Judah Hart, p. pro Maurice J. Hart."

The proof shows that the officers of the bank knew that Maurice Hart used the money represented by these notes in purchasing or making advances on these claims. They accepted his statement that he was the agent of his father, and authorized to sign the notes. He told them his power of attorney was lodged in the Germania Bank; but no officer of the Citizens' Savings Bank ever saw this power until after this suit was brought; in fact, not until it was produced on the trial, by the cashier of the Germania Bank, under *subpœna duces tecum.*

The following is a copy of that power, the only one offered in evidence, or proven to have been given by Judah Hart to Maurice:

"New Orleans, La., *January 25, 1876.*
" *To the Germania National Bank, New Orleans:*

" Sir—Please take notice that *Maurice J. Hart I* hereby authorized as *my* attorney, to make deposits, draw, sign and indorse notes, checks, or bills of exchange ; to draw whatever money or moneys that *I* have now or may have at *my* credit with you or others, and in general to transact all business in *my* name, place, and stead, hereby ratifying in advance all *he* may do. You have *his* signature herewith, which please respect when presented to you.

" Your obedient servant,

" (Signed)                       Judah Hart."

All of this instrument, except the signature, and the words and figures Italicised, is the blank form which the Germania Bank, and, perhaps, most of the other banks in New Orleans, keep for their own convenience, and for the use of their customers, as occasion may require.

Judah Hart says that his object in giving this power was to enable Maurice to check for money that might be required from time to time in his business as pawnbroker; and that he gave it to Maurice, who was not in his employ, because he was the elder of his two sons ; and if he had preferred the younger, there might have been bad feeling between the brothers. Besides, Samuel J. Hart was in bad health ; and went to New York, temporarily, on that account.

The fact that this power was addressed specially to, and was lodged with, the Germania Bank indicates clearly that the sole object was to enable Maurice to represent his father in any business which he might have in that bank ; and to use the money and means of Judah Hart, at his credit in that bank, in and about the business and interest of Judah Hart. We do not think any other bank in New Orleans would have been justified in dealing with Maurice J. Hart as the general agent of his father, on the faith of this power. It was ample for the business of

Judah Hart with the Germania Bank : it was restricted to his business, and to his business with that bank.

There is no room for doubt that this was the purpose of Judah Hart in giving the power ; but it is possible for a power to be given in such terms that the attorney may abuse it, and that innocent third persons may acquire rights against the constituent which he never contemplated or intended. If Judah Hart had announced through the public press that Maurice J. Hart was his agent, or, by public notarial act, accessible to all, had conferred on Maurice J. Hart the powers specified in this instrument, without words restricting their exercise to his business with persons, or banks, or corporations named or specially indicated, a state of case might have been presented very different from that with which we are dealing. But Judah Hart did not choose to do either. There is no proof that he informed any person whomsoever that he had given this power ; and there is nothing in the case to show that it was ever exhibited to any other person besides the proper officers of the Germania Bank. It could not have been used by Maurice to deceive any person ; for his father did not leave it in his custody.

In general, powers of attorney are designed to be used only about the business of the constituent. No matter how broad the terms may be in which they are conceived, those who deal with the attorney, knowing that he is abusing the power for his own purposes, aid him in perpetrating a fraud ; and acquire no rights against the constituent.

The officers of the Citizens' Savings Bank had no communication with Judah Hart during the entire period of their large dealing with Maurice J. Hart; nor can they affirm that they were deceived or misled by the power. They were informed by Maurice that it was lodged at the Germania Bank ; but they do not pretend that they ever asked him to show them the original or a copy ; nor did they give themselves the trouble to ascertain what were its objects, its nature and extent. Judah Hart states that he had no business with the bank ; that he never dealt in city debts ; that he never borrowed money for his business, having ample means of his own ; that he knew nothing of the business which Maurice was engaged in ; and that he had no interest in that business, and derived no benefit from it.

Each one of the seventeen notes sued on is a promissory note and a contract of pledge ; and the one cannot be separated from the other. The law requires the power to pledge to be express and special ; and there is no such power in this case. If the officers of the Savings Bank believed that the business which Maurice was doing with the means obtained from the bank was really for account of his father, they could not have supposed that the property pledged belonged to Maurice, or to any other person than Judah Hart. According to their theory, they

not only accepted these several pledges, by the attorney, of the property of his constituent without the shadow of authority, but, in accordance with the terms of the several contracts, they sold and disposed of that property, without the intervention of justice. The charter of the bank, Act of 1872, p. 120, required that the value of the property so pledged should exceed, by one third, the amount of the loan; and yet, this whole affair was so managed that, after applying the proceeds of the sale of this property to the loan debt, there remained the large balance of $7500, bearing interest at two per cent a month, which the bank claims of Judah Hart.

Proper inquiry by the officers of the bank would have satisfied them that the agency of Maurice J. Hart was limited to his father's business with the Germania Bank; and that this power did not authorize Maurice to buy, or to sell, or to pledge, or to borrow, or to loan for account of his father. They might also have learned, by inquiry at Judah Hart's well-known, long-established, place of business, that he was a pawnbroker, lending money only on pledges of jewelry; a business altogether different from that of borrowing money at two per cent a month, to be used in the extra hazardous speculation in claims against the city which has given rise to this litigation.

If any loss has fallen upon the bank in this case, it is to be attributed solely to the extraordinary want of care and diligence which characterizes its dealing with one professing to act under delegated authority; and for this Judah Hart is not answerable.

The judgment appealed from is affirmed with costs.

---

## Dissenting Opinion.

WHITE, J. I dissent from the opinion and decree herein, and as the view taken by the court seems to me, in a large measure, destructive of what I believe the law of agency to be, I regret that time has not been at my disposal to elaborate the reasons of my dissent and to support them by copious reference to authority. However, as my views are the result of the application of what seems to me elementary principles, I feel no very great hesitancy in briefly stating them, although hurriedly and without any reference to authority.

I take it that the power of attorney *gives in express words power to the agent to draw bills and notes, and that the body of the mandate contains no limit on the power whatever.* The only semblance of limitation is that held to result from the power having been addressed to the bank, so that the question is simply as follows: Where an express power is given to an agent to do a particular thing, without limitation or restriction, does the fact that the written evidence of the giving of the

power is addressed to or deposited with a particular person limit the agent to dealing alone with the person in whose hands the power or rather the evidence of it is deposited? I think not, because the only question is, did the agent have the power, and is the power limited or restricted? True, the address may be said to be a part of the written mandate, but the important part of the contract is that in which the extent of the powers is defined. Now, it is true, the court finds circumstances *dehors* the instrument from which the limited nature of the mandate is deduced. Whatever may be the view of these circumstances, their effect between the principal and agent, they cannot, in my opinion, be invoked to destroy the rights of a third person, which are to be tested by the scope of the agent's written authority, not by the extent of that authority as explained by matters and relations existing between the principal and agent, and between them alone. Nor do I think the fact that the parties dealing with the agent had not seen the written power when they lent the money and took the notes should have any earthly effect on the right to recover. *The parties dealt with the agent, as such,* and their rights are to be governed by the question of whether the power was in existence, not whether it was seen. The fact of the agency at the time of the contract is the legal test of the principal's obligation, not the fact of seeing the power. Now, while I think the law is undoubted, that one cannot recover who knowingly deals with an agent, even within the scope of the agency, in such a way as knowingly to lend his aid to the defrauding of the principal by the agent, I find no proof justifying the application of this reasoning to the present case. True, the proof establishes that the parties knew that the principal was a pawnbroker; but this does not authorize the inference that the parties knew the money borrowed was not for the purposes of the principal. There is no law creating a simple, how much less so a legal, presumption that a pawnbroker from the nature of things can never require to borrow money. I think there is a confusion in saying that the note and pledge cannot be divided. The confusion, it seems to me, comes from the confounding of the evidence of the contracts with the contracts themselves. The contracts were twofold, principal and accessory; the evidence may be one, the contracts are nevertheless twofold. Grant that the pledge was beyond the scope of the agent's authority, the failing of the accessory would not entail that of the principal obligation. If the things pledged were the property of the principal, and he has suffered any loss by their having been disposed of at private sale, such would have been a good defense, but none has been urged in the pleadings.

I think the plaintiff entitled to recover.

Rehearing refused.